James H. COKER, Appellant,

v.

The TEXAS ALCOHOLIC BEVERAGE COMMISSION et al., Appellees.

No. 18548.

Court of Civil Appeals of Texas, Dallas.

May 1, 1975.

Rehearing Denied May 22, 1975.

David C. Musslewhite, Moore, Peterson, Bauer, Williams & Musslewhite, Dallas, for appellant.

Henry Wade, Dist. Atty. of Dallas County, John H. Hagler, Asst. Dist. Atty., John L. Hill, Atty. Gen., Mark Perlmutter, Asst. Atty. Gen., Dallas, for appellees.

GUITTARD, Justice.

This appeal requires construction of constitutional and statutory provisions governing local-option elections to prohibit or legalize sale of alcoholic beverages.

The Texas Alcoholic Beverage Commission denied James H. Coker a permit for sale of mixed beverages on the ground that he failed to attach to his application certificates by the county clerk and city secretary stating that the premises specified in the application were located in an area where sale of alcoholic beverages was permitted. These certificates could not be obtained because the local officials mentioned took the position that sale of alcoholic beverages was not permitted in the area. The trial court sustained the Commission's order, and the applicant appeals. We affirm on the ground that the local officials were correct.

More specifically, we hold (1) that a justice precinct which became dry because of a vote to prohibit the sale of alcoholic beverages at a precinct election remains dry notwithstanding a subsequent county-wide vote to legalize sale of alcoholic beverages in the county; (2) that a dry vote at a county-wide local-option election does not nullify an earlier dry vote in a justice precinct; (3) that the area in question remained dry, although detached from the dry precinct and added to a wet precinct which thereafter voted in favor of legalizing the sale of mixed beverages at a special

election under the 1970 constitutional amendment; and (4) that the applicant is not denied equal protection of the law by any difficulty of establishing the exact boundaries of the precinct that originally voted dry because the boundaries may be determined administratively by the Commissioners Court.

### 1. The 1935 Election

We consider first the effect of the county-wide vote in 1935 to legalize the sale of alcoholic beverages.

The facts are stipulated. Before 1967, the premises in question were located in Justice Precinct Two of Dallas County. That precinct had voted to prohibit the sale of alcoholic beverages in local-option elections held in 1877, 1882 and 1894. State-wide prohibition was adopted by constitutional amendment in 1919, and was repealed by constitutional amendment in 1935. The 1935 amendment directed the Legislature to enact laws "whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority of those voting, determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited *or legalized* within the prescribed limits . . . ." Vernon's Ann.St.Tex.Const. art. XVI, § 20(b) (emphasis added).

In accordance with the 1935 amendment, the Legislature in 1935 enacted the Texas Liquor Control Act.[1] Under that Act a county-wide local-option election was held in December 1935, and a majority voted to legalize the sale of alcoholic beverages. No other local-option election at the precinct level has been held in Precinct Two or in Precinct One, to which the area in question was annexed by order of the commissioners' court in 1967.

The applicant contends that the area in question is wet because of the wet vote in the 1935 county-wide local-option election. He argues that since the 1935 amendment to the constitution authorizes counties, justice precincts, and cities to "determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized," the county is on an "equal footing" with the precinct. Consequently, he says, a county-wide vote to prohibit sale of intoxicating beverages supersedes any previous vote to legalize, and, likewise, a county-wide vote to legalize supersedes any previous precinct vote to prohibit. He concedes, however, that this "equal-footing" principle would permit the precinct to make a contrary determination at a contemporaneous or subsequent election. Thus, according to the applicant's theory, the status of any precinct may be changed from dry to wet and back to dry again, and so on indefinitely, by successive votes in the precinct and in the county, although the county may consistently vote wet and the precinct may consistently vote dry, or vice versa.

The applicant insists that this result follows from inclusion of the words "or legalize" in the 1935 constitutional amendment. Before 1919, the constitution of 1876 permitted counties, precincts and cities to vote by local option to "prohibit" the sale of alcoholic beverages and granted no authority to any of these subdivisions to "legalize." Tex.Const. art. XVI, § 20 (1876). Under that constitution the rule was that if the county voted to prohibit, that vote was effective in "every foot" of the county, and that no precinct could thereafter vote to legalize. Griffin v. Tucker, 102 Tex. 420, 118 S.W. 635, 639 (1909); *Ex parte* Fields, 39 Tex.Cr.R. 50, 46 S.W. 1127, 1128 (1898).[2]

---

1. Tex.Laws, 2d Spec.Sess.1935, ch. 467 at 1795, now codified as Tex.Penal Code Auxiliary Laws, arts. 666–1 to 666–60 (Vernon's Ann.1974).

2. The contrary result had been reached in Whisenhunt v. State, 18 Tex.Ct.App. 491

(1885) and Woodlief v. State, 21 Tex.Ct. App. 412, 2 S.W. 812 (1886). The cases cited in the text appear to be based in part on Tex.Rev.Civ.Stat. art. 3395 (1895) which expressly provided that a wet precinct could not exist in a dry county. The statute was repealed by adoption of state-wide prohibi-

Applicant bases his argument in part on these decisions. He reasons that if under the 1876 constitution a vote to prohibit was effective in every part of the county, regardless of any prior or subsequent vote in the precinct, it must follow that under the 1935 amendment, which authorizes each subdivision to legalize as well as prohibit, a county-wide vote to legalize is likewise effective in every part of the county, regardless of any prior vote in the precinct.

We cannot accept this argument because we find nothing in either the 1935 amendment, or in the statutes enacted pursuant to that amendment, permitting the will of the voters in a precinct concerning the sale of alcoholic beverages in that precinct to be overridden by a vote of the county as a whole. The crucial question is whether the applicable constitutional and statutory provisions put counties and justice precincts on an "equal footing," as the applicant contends, or whether they give priority to the vote of the smaller subdivision. We conclude that they give priority to the smaller subdivision, and, accordingly, that they continue the pre-1919 rule, followed in such cases as *Ex parte* Pollard, 51 Tex.Cr.R. 488, 103 S.W. 878 (1907) that a political subdivision which has once voted dry remains so until sale of alcoholic beverages is legalized by a wet vote in the same subdivision.

We base this conclusion on subsection (c) of the 1935 amendment, which provides:

> *In all counties, justice's precincts* or incorporated towns or cities *wherein the sale of intoxicating liquors had been prohibited by local option elections* held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, *it shall continue to be unlawful to manufacture, sell,* barter or

exchange *in any such county, justice's precinct* or incorporated town or city, *any spirituous, vinous or malt liquors* or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, *unless and until a majority of the qualified voters in such county or political subdivision* thereof voting in an election held for such purpose shall determine such to be lawful . . . . [Emphasis added.]

■ The word "such," as used twice in this subsection, refers back to the preceding language, "counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections," and identifies the particular political subdivision that has previously voted dry. A majority of the voters in "such" subdivision must vote to legalize in order to make the subdivision wet. The words "such county or political subdivision thereof" cannot reasonably be interpreted as referring to the county if the precinct has previously voted dry.

The same intention is evidenced by the Texas Liquor Control Act, enacted in November 1935 by the same Legislature which drafted the 1935 amendment and submitted it to the voters of the state. Section 23 of this Act,[3] provides in part as follows:

> As to any particular type of liquor, each county, *justice precinct*, incorporated city or town within this State *shall be deemed to be a 'dry area'* unless such county, justice precinct, city or town, was a 'wet area' at the time Section 20 of Article XVI of the Constitution became effective and has not since said time changed its status, or *unless the sale of that particular type of liquor has been legalized by local option election in such*

tion in 1919, or in any event, by omission from the Revised Civil Statutes of 1925. Myers v. Martinez, 320 S.W.2d 862, 864 (Tex.Civ.App.—San Antonio), writ ref'd n. r. e. *per curiam*, 160 Tex. 102, 326 S.W.2d 171 (1959).

3. Tex.Laws, 2nd Spec.Sess.1935, ch. 467, at 1795, now codified as Tex.Penal Auxiliary Laws Annotated, art. 666–23 (Vernon 1974).

county, *justice precinct*, city or town, *since said time.* [Emphasis added.]

■ Again, the word "such" refers back to and identifies the particular subdivision which has previously voted dry, and the statute provides that it shall be deemed dry until legalized by local-option election in "such" subdivision.

This construction is consistent with the only cases directly in point decided under the 1935 amendment. Jackson v. State, 135 Tex.Cr.R. 140, 118 S.W.2d 313, 315 (1938), and Powell v. Smith, 90 S.W.2d 942, 944 (Tex.Civ.App.—Fort Worth 1936, no writ) both involved county-wide votes to legalize sale of alcoholic beverages at elections held under the 1935 amendment. Both held that after a precinct has once voted dry it can be made wet only by vote of the same area, regardless of the fact that it may be included in a larger area that votes wet.

Our construction of the amendment is consistent also with Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 553 (1937) in which a dry municipality had been annexed by a larger wet municipality, and the Supreme Court held that before 1919 the annexed area "remained dry until it was voted wet and a subsequent election held in and for the same identical area which had theretofore voted dry," and said that this same rule applied under the 1935 amendment.

The applicant contends that these decisions are erroneous and should not control here because all were based on pre-1935 authorities, and none considered the effect of the words "or legalized" as used in the 1935 amendment. He insists that they have been overruled by the decision of the Supreme Court in Myers v. Martinez, 160 Tex. 102, 326 S.W.2d 171 (1959), which, he says, considers the effect of the 1935 amendment and holds that under that amendment counties and precincts are on "equal footing."

We do not agree that *Myers* overruled *Jackson* and *Powell. Myers* did not deal with the contention now advanced by the applicant that a county-wide wet vote nullifies a previous dry vote in the precinct. Although *Myers* may be interpreted as rejecting certain dicta in the *Jackson* and *Powell* opinions to the effect that a wet precinct cannot exist in a dry county, *Myers* did not hold that a dry precinct may be made wet by a county-wide vote to legalize, since that question was not before the court.

Moreover, the *Myers* decision does not support the applicant's argument that counties and precincts are on "equal footing" under the 1935 amendment. The language concerning "equal footing" is found in the opinion of the court of civil appeals. Myers v. Martinez, 320 S.W.2d 862, 866 (Tex.Civ. App.—San Antonio), writ ref'd n. r. e. *per curiam,* 160 Tex. 102, 326 S.W.2d 171 (1959). The Supreme Court, however, expressly declined to approve this part of the opinion and pointed out that this language implied that the Legislature was without power under the 1935 amendment to enact a law prohibiting wet precincts and cities in dry counties. The Supreme Court observed that it was unnecessary to decide whether such a statute would be unconstitutional. Accordingly, the court limited its approval to that part of the opinion of the court of civil appeals which held that the 1935 amendment authorized the Legislature to permit wet precincts in dry counties. Myers v. Martinez, 160 Tex. 102, 326 S.W.2d 171, 172 (1959).

■ As we understand both *Myers* and Warren v. Moore, 337 S.W.2d 395, 397 (Tex. Civ.App.—Amarillo 1960, writ dism'd), which the applicant also cites in support of his "equal-footing" argument, they interpret the 1935 amendment as providing more local self-determination rather than less than was allowed before 1919. Under pre-1919 decisions, such as Griffin v. Tucker, 102 Tex. 420, 118 S.W. 635, 639 (1909) and *Ex parte* Fields, 39 Tex.Cr.R. 50, 46 S.W. 1127, 1128 (1898), a dry precinct could exist

in a wet county but not a wet precinct in a dry county. Thus counties and precincts were on "equal footing" with respect to voting to prohibit, but not with respect to voting to legalize. Under the 1935 amendment, as interpreted in *Myers* and *Warren,* a wet precinct may also exist in a dry county because that amendment authorizes precincts to "legalize" as well as to "prohibit." We do not interpret the 1935 amendment as putting counties and precincts on an "equal footing" with respect to both legalizing and prohibiting. We conclude, rather, for the reasons above stated, that subsection (c) of the amendment abolished any "equal footing" previously existing and gave priority to the vote of the precinct over the vote of the county as a whole, with respect to both prohibition and legalization.

Moreover, the Legislature itself has construed the 1935 amendment as requiring, or at least permitting, such priority. The 1973 amendment to § 32 of the Texas Liquor Control Act expressly adopts the principle that the vote of the smaller subdivision prevails over a contrary vote in the larger subdivision:

> *Any authorized voting unit, that is, any* county, *justice precinct,* or incorporated city or town *which has at any time heretofore exercised* or may at any time hereafter exercise *the right of local option, shall retain the status adopted,* whether absolute prohibition or legalization of the sale of alcoholic beverages of one or more of the various types and alcoholic contents on which an issue may be submitted under the terms of Section 40 of Article I, *until that status is changed by a subsequent local option election in the same authorized voting unit*; provided, however, that consistent with the purpose of the local option provisions of the Texas Liquor Control Act and in order to insure that each voter shall have the maximum possible control over the status of the sale of alcoholic beverages in the area of his residence, it is specifically provided that the status which resulted from or is the result of a duly called election for an incorporated city or town shall prevail as against the status which resulted from or is the result of a duly called election in a justice precinct or county in which such incorporated city or town, or any part thereof, is contained; and provided, further, that *the status which resulted from or is the result of a duly called election for a justice precinct shall prevail as against the status which resulted from or is the result of a duly called election* in an incorporated city or town in which such justice precinct is wholly contained or *in a county in which such justice precinct is located.* [Emphasis added.]

We do not suggest that this 1973 statute operates retroactively to determine the effect of the county-wide election in 1935. We cite it only as showing a legislative interpretation of the 1935 amendment contrary to the applicant's "equal-footing" contention.

▆▆▆ The applicant recognizes this problem and argues that the 1973 statute is unconstitutional under the 1935 amendment. We agree that the statute would be unconstitutional if the applicant were correct in his contention that the "equal-footing" principle is required by the 1935 amendment. However, for reasons already stated, we do not so construe the 1935 amendment. We conclude, rather, that the 1973 statute declared the law as it existed since adoption of the 1935 amendment. Consequently, we hold that the vote in favor of legalization of the sale of alcoholic beverages in the county-wide local-option election of 1935 was not effective to legalize such sales in precincts, such as Precinct Two, which had previously voted dry and had never subsequently voted wet.

### 2. The 1917 Election

The applicant contends also that the pre-1900 precinct elections were nullified by a county-wide local-option election in 1917, in

which the majority voted to prohibit the sale of alcoholic beverages. The effect of the 1917 election also turns on interpretation of the 1935 amendment. Subsection (c) provides that sale of intoxicating liquors shall continue to be prohibited "in all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of taking effect of Section 20, Article XVI of the Constitution of Texas." The section of the constitution referred to is apparently the prohibition amendment of 1919. The applicant argues that the local-option elections of 1877, 1882 and 1894, were no longer "in force" in Precinct Two after the county-wide election of 1917 and, consequently, the only local option "in force" in the precinct was that resulting from the county-wide 1917 election, which was superseded by the county-wide wet vote at the 1935 election.

In support of this contention, the applicant cites Garrett v. State, 61 Tex.Cr.R. 254, 134 S.W. 696, 698 (1911) and Raby v. State, 42 Tex.Cr.R. 56, 57 S.W. 651 (1900). These cases do not control the present problem. Garrett held that a dry vote in the precinct does not prevent a local-option election in the county within two years after a precinct election. The court goes on to say that "when the whole county adopts local option, it supersedes and does away, at least for the length of time that the county continues the law in force, the previous adoption thereof by one or more of the several precincts." In Raby, a conviction for violating the precinct local-option law was reversed because the entire county had voted dry, and the court said that county-wide local option "absorbs precincts of the county where local option formerly existed . . . so that an offense occurring in the precinct territory is no longer an offense against the precinct law, that having been obliterated, but is an offense against the county local option law, which alone exists in the territory."

■ Neither of these opinions indicates that the court considered whether the precinct local-option law would be destroyed if the county subsequently voted to repeal its local-option law, except that the Garrett court was careful to limit its decision by stating that county local option superseded precinct local option "at least for the length of time the county continues the law in force." On the other hand, the only authority on the point is clearly against the applicant's position. Powell v. Smith, 90 S.W.2d 942, 944 (Tex.Civ.App.—Fort Worth 1936, no writ), held that a pre-1919 county-wide dry vote did not nullify a previous dry vote in the precinct, and, consequently, that the precinct remained dry, regardless of a county-wide vote to legalize at an election held under the 1935 amendment. Thus, according to this decision, after a precinct has voted dry at a local-option election, its status cannot be affected by a subsequent county-wide election, whether the county as a whole votes wet or dry. This holding is based on the principle, announced in various cases cited in the Powell opinion, that once an area votes dry it remains dry until the same area votes wet. Since we hold, for reasons already stated, that the same rule applies under the 1935 amendment, we also hold that the 1917 election did not for this purpose nullify the previous dry votes in Precinct Two.

### 3. The 1971 Election

The applicant further contends that even if Precinct Two did not become wet by reason of the county-wide election of 1935, the area in question had been incorporated into Precinct One in 1967, and that it became wet as a result of a special mixed-beverage election in Precinct One in 1971.

This contention is directly contrary to the statute which authorized the mixed-beverage election. Sale of mixed beverages was authorized by the 1970 amendment to article XVI, § 20 of the constitution. Following this amendment, the Legislature enact-

ed Tex.Laws 1971, ch. 65, § 27, at 700, which provided for a special election on May 18, 1971, concerning sale of mixed beverages "in each area now wet for alcoholic beverages."

Pursuant to this statute, a mixed-beverage election was held in Precinct One, and the votes were tabulated separately in that part of the precinct which was considered wet and in that part of the precinct, including the area in question, which was considered dry. The vote in each part of the precinct favored sale of mixed beverages.

Applicant argues that the expression "area now wet for alcoholic beverages" refers only to an existing political subdivision, such as a county, precinct, or incorporated city, and, consequently, that all of Precinct One was an "area now wet" for the purpose of this statute. He insists that the vote approving the sale of mixed beverages in the precinct made the entire precinct wet for all purposes.

This interpretation cannot be adopted in view of the express language of the 1971 statute. Use of the word "area" rather than "political subdivision" indicates recognition of cases like Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 553 (1937) and *Ex parte* Fields, 86 S.W. 1022, 1023 (Tex.Cr. App.1905), holding that an existing political subdivision may be partly wet and partly dry as a result of changes in precinct or municipal boundaries. Accordingly, the 1971 statute adds:

> If the result of said election is to legalize the sale of mixed beverages, such legalization shall be effective only in the area or areas now wet and shall not affect any area presently dry . . . .

No more explicit language could have been chosen to express the intention that the special election concerning mixed beverages should have no effect in any dry territory. We need not pass on the question of whether such a special election could be held in only the wet part of a precinct that was partly wet and partly dry, since that question is not presented in this case.

### 4. The Precinct Boundaries

Alternatively, the applicant contends that if article XVI, § 20 of the Texas Constitution and the Texas Liquor Control Act are construed to mean that the area in question must remain dry until the voters in the identical area that voted dry in 1877, 1882 and 1894, vote wet, then those constitutional and statutory provisions deny equal protection of the law because a local-option election cannot now be held within the exact territorial boundaries of Justice Precinct Two as they existed on the date of those elections. He relies on evidence showing that the former precinct boundaries cannot now be ascertained because of references to roads which have ceased to exist and cannot now be located. The practical result, he says, is that no election can be held in such territories, and their status will be permanently fixed as dry. This result, he insists, will deny residents of the area equal protection of the law under the Fourteenth Amendment of the Constitution of the United States, because the laws as so construed would not operate equally and uniformly with respect to all persons in similar circumstances.

In reply, the Commission contends that under article 666–32, as amended in 1973, the election may not be held in the identical territory, but only in the "same authorized voting unit." The Commission interprets this term to mean that if the original dry vote was in a justice precinct, then a vote to legalize in the precinct which currently includes the area in question may vote to legalize, even though it may be a different precinct from the one that originally voted dry. Accordingly, the Commission insists that applicant's remedy is to petition for a

local-option election in Precinct One, although it is already partly wet.[4]

 We need not decide whether the Commission's contention is correct, or whether the vote to legalize must take place in the identical area that originally voted dry. *Cf.* Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 553 (1937). To dispose of the present case, we need only determine whether the applicant and the residents of former Precinct Two are denied equal protection of the laws because the exact boundaries of the old precinct cannot be determined. We hold that they are not denied equal protection. Assuming, without deciding, that applicant's remedy is to petition the commissioners' court for an election on the issue of legalizing sale of intoxicating beverages in former Precinct Two, we hold that this remedy would not be defeated by the difficulty of establishing the exact boundaries. In this respect, technicality must yield to practicality, especially in view of the constitutional question raised. Under article 666–32, the commissioners' court has responsibility to call the election, and we see no reason why it could not protect all interested persons by drawing a line approximating the original boundaries. Its determination of the boundaries would not be exercised under its general power to fix precinct boundaries, but would be an administrative determination incidental to its power to order an election, and would control unless clearly erroneous or arbitrary.

Neither does any difference in the boundaries of Precinct Two at the time of the local-option elections in 1877, 1882 and 1894 present an insurmountable obstacle to an election in the area that originally voted dry. The evidence indicates that the area of Precinct Two was reduced after the elections in 1877 and 1882 and before the election of 1894. If an election is sought in the area that originally voted dry, the change of precinct boundaries before 1894 would not affect the matter,[5] and neither would the election in the smaller area in 1894, since that election also favored prohibition. The residents of the area that originally voted dry in 1877 are not denied equal protection of the law because the boundaries of that area may be determined administratively by the commissioners' court.

On motions for rehearing, our original opinion is withdrawn, and the above opinion is substituted. All motions for rehearing are overruled, and the judgment of the trial court is affirmed.

---

4. The Attorney General seems to have adopted a similar view in Tex. Att'y Gen. Op. Co. C–681 (1966). *Cf.* Patton v. Texas Liquor Control Board, 293 S.W.2d 99 (Tex. Civ.App.—Austin 1956, writ ref'd n. r. e.)

5. We do not pass on the question of whether a change in precinct boundaries as between two precincts with the same local-option status is effective for the purpose of subsequent local-option elections.