ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 11, 2008

The Honorable Jeri Yenne                         Opinion No. GA-0635
Brazoria County Criminal District Attorney
County Courthouse                                Re: Wet/dry status of certain precincts within
111 East Locust, Suite 408A                      Brazoria County  (RQ-0656-GA)
Angleton, Texas 77515

Dear Ms. Yenne:

You inform us that on November 6, 2007, Brazoria County (the "County") held a county-wide local option election at which a majority of the voters in the county voted affirmatively for "[t]he legal sale of beer and wine for off-premise consumption only" and "[t]he legal sale of mixed beverages in restaurants by food and beverage certificate holders only."[1] Three political subdivisions within the County—former Justice Precinct 5 ("Precinct 5"), the City of Sweeny ("Sweeny") located within Precinct 5, and the City of Richwood ("Richwood")—have held prior local option elections. Request Letter, *supra* note 1, at 1–2. Following the 2007 county-wide election, you tell us, County officials and prospective applicants for licenses or permits under the Texas Alcoholic Beverage Code have raised questions about the alcoholic beverages that may be sold in Precinct 5, Sweeny, and Richwood and the types of alcoholic beverage permits that may be issued for locations in these political subdivisions. *Id.* at 2. Accordingly, you ask six questions, which we paraphrase below:

1.    After the 2007 county-wide election, are wine and beer sales lawful in Sweeny or do beer sales remain prohibited in Precinct 5?

2.    If beer sales remain prohibited in Sweeny/Precinct 5, can the county clerk certify locations in Sweeny/Precinct 5 as "wet" for both wine and beer sales on an application for a Wine and Beer Retailer's Off-Premise Permit?

3.    If the county clerk cannot certify Precinct 5 as "wet" for beer, what certification, if any, should be made on the Texas Alcoholic Beverage Commission's ("TABC") application forms for a Wine and Beer Retailer's Off-Premise Permit or a Mixed Beverage Permit?

---

[1]*See* Letter from Honorable Jeri Yenne, Brazoria County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Dec. 19, 2007) (on file with the Opinion Committee, *also available at* http://www. texasattorneygeneral.gov) [hereinafter Request Letter].

4.      If the county clerk inserts qualifying language such as "beer is excluded from this certification" as to the required certification on the TABC application form, can the TABC legally issue a modified permit for the retail sale of wine-only off-premises or a modified permit for the sale of mixed beverages excluding beer?

5.      Can a Mixed Beverage Permit application be certified as "wet" for locations within Richwood or must certifications under Alcoholic Beverage Code section 11.37 be declined or qualified as not including beer due to Richwood's limitation of beer sales to off-premises only pursuant to its 1968 local option election?

6.      If on-premises sale of beer remains prohibited in Richwood, can a Mixed Beverage Permit, which by definition includes beer, be issued for locations in Richwood?

Request Letter, *supra* note 1, at 3–4.

## I.      Background

### A.      Local Option Election Provisions

To provide a context for your questions, we first provide an overview of the constitutional and statutory framework for local option elections in Texas. Article XVI, section 20 of the Texas Constitution authorizes the Legislature to regulate the manufacture, sale, possession, and transportation of intoxicating liquors. *See* TEX. CONST. art. XVI, § 20(a). This provision also directs the Legislature to enact local option elections laws:

> The Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may by a majority vote . . . determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

TEX. CONST. art. XVI, § 20(b). Pursuant to the constitutional directive, the Legislature has enacted laws providing for local option elections and the sale of intoxicating liquors, which are codified at chapter 251 of the Alcoholic Beverage Code and chapter 501 of the Election Code. *See* TEX. ALCO. BEV. CODE ANN. §§ 251.71–.82 (Vernon 2007) (subchapter D); TEX. ELEC. CODE ANN. §§ 501.001–.155 (Vernon Supp. 2007) (subchapters A–D).[2]

---

[2]In 2005, subchapters A, B, and C of chapter 251 of the Alcoholic Beverage Code were repealed and codified at chapter 501 of the Election Code. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 975, §§ 1–8, 2005 Tex. Gen. Laws 3269, 3269–77.

Under the Election Code, upon receiving a valid petition from the voters of a county, justice precinct, or a city in the county, the commissioners court must order an election "in the political subdivision to determine whether the sale of alcoholic beverages of one or more of the various types and alcoholic contents shall be prohibited or legalized in the political subdivision." TEX. ELEC. CODE ANN. § 501.021 (Vernon Supp. 2007). The commissioners court's election order must state whether the election is to prohibit or legalize the sale of the alcoholic beverage in question. *Id.* § 501.034.[3] In a prohibitory election, if a majority of those voting favor the prohibition, i.e., the issue passes, the sale of the alcoholic beverage in question is prohibited, and the prohibition remains in effect until changed by a subsequent election. *Id.* § 501.151(b). In a legalization election, if a majority of those voting favor the sale and the issue therefore passes, sale of the alcoholic beverage is legal on the entry of the commissioners court's order, and the legalization remains in effect until changed by a later election. *Id.* § 501.151(c). A political subdivision's local option status does not change if the issue does not pass in a prohibitory or legalization election. *See id.* § 501.151(d).

The local option elections determine whether an area is "dry" or "wet" with respect to particular types and alcoholic contents of alcoholic beverages. Under the Alcoholic Beverage Code, an area is "dry" as "to an alcoholic beverage of a particular type and alcohol content if the sale of that beverage is unlawful in the area." *See* TEX. ALCO. BEV. CODE ANN. § 251.71(a) (Vernon 2007). And an area is "wet" as "to an alcoholic beverage of a particular type and alcohol content if the sale of that beverage is lawful in the area." *Id.*

## B.    History of Brazoria County Elections

You ask about the alcoholic beverages that may be lawfully sold in Precinct 5, Sweeny, and Richwood after the 2007 county-wide election. In the county-wide election, the voters considered two issues: "[t]he legal sale of beer[4] and wine for off-premise consumption only," and "[t]he legal sale of mixed beverages[5] in restaurants by food and beverage certificate holders only." Request

---

[3]In general, in an area where the sale of a type or class of alcoholic beverage has been *prohibited,* in the event of an election to *legalize* the sale of one or more of the prohibited type or class, the ballot must permit voting for or against the statutorily prescribed issue or issues. *See* TEX. ELEC. CODE ANN. § 501.035(b), (d) (Vernon Supp. 2007). And in an area where the sale of a type or class of alcoholic beverage has been *legalized,* the ballot in a *prohibitory* election must permit voting for or against the statutorily prescribed issue or issues. *Id.* § 501.035(c); *see also id.* §§ 501.035(b)–(e) (prescribing the issues and their language that may be presented on the ballot); 501.105(b) ("The issue appropriate to the election shall be printed on the ballot in the exact language stated in Section 501.035.").

[4]"'Beer' means a malt beverage containing one-half of one percent or more of alcohol by volume and not more than four percent of alcohol by weight, and does not include a beverage designated by label or otherwise by a name other than beer." TEX. ALCO. BEV. CODE ANN. § 1.04(15) (Vernon Supp. 2007).

[5]"'Mixed beverage' means one or more servings of a beverage composed in whole or part of an alcoholic beverage in a sealed or unsealed container . . . for consumption on the premises where served or sold by the holder of a mixed beverage permit, the holder of a daily temporary mixed beverage permit . . . or the holder of a private club late hours permit." *Id.* § 1.04(13). An "alcoholic beverage" is "alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted." *Id.* § 1.04(1).

Letter, *supra* note 1, at 1 (footnotes added); *see also* TEX. ELEC. CODE ANN. § 501.035(b)(3), (9) (Vernon Supp. 2007) (setting forth these two issues as those, among others, that may be submitted at local option elections). Both passed. *See* Request Letter, *supra* note 1, at 1. You ask about the effect, if any, of the county-wide passage of the two issues within the territorial limits of the three political subdivisions contained within the county, each of which has held prior local option elections. *See id.* at 3–4. We look at these prior elections.

### 1.    The County

Exhibit B attached to the Request Letter sets forth the history of the local option elections in the County. *See* Request Letter, *supra* note 1, Exhibit B, History of Alcoholic Beverages, Brazoria County, Texas, at 1 [hereinafter Exhibit B]. In 1919, a majority of voters in the County voted for "prohibition" and thus the County as a whole was "dry." Exhibit B, at 1. In 1933, in a county-wide election, a majority of the County voters voted "wet" for the sale of beer. *Id.* at 1–2. In 1936 and 1937, a majority of the County voters in county-wide elections voted against legalizing "the sale of all liquors." *Id.* at 4–5. Thus according to Exhibit B, after the 1936 and 1937 elections the County remained "wet" for the "sale of beer only" throughout the County, including Precinct 5, Sweeny, and Rockwood. *Id.*

### 2.    Precinct 5/Sweeny

In 1958, a majority of the voters of former[6] Precinct 5 (located entirely within the County) voted for the "prohibition of [t]he legal sale of beer" making the precinct "dry" for all alcoholic beverages. *Id.* at 6 ("Local Option Status: Changes to totally dry"). In 1982, a majority of the voters of Sweeny (located entirely within Precinct 5) voted against "the legal sale of beer" in the city. *Id.* at 13. The proposition failed, and thus Sweeny, like the remainder of Precinct 5, remained "dry" for all alcoholic beverages according to Exhibit B. *Id.* at 13 ("Local Option Status remains totally dry").

---

[6]You do not suggest that the "former" status of Precinct 5 is an issue here. In any case, the statutory framework and case law suggest that the "former" status would not change the analysis or conclusion with respect to the local option status of Precinct 5. *See* TEX. ALCO. BEV. CODE ANN. §§ 251.72–.73, .80(a) (Vernon 2007) (providing that the status resulting from local option elections in a voting unit is retained until changed by elections specific to that voting unit and that the status resulting from elections in a smaller political subdivision prevails over the status resulting from elections in the larger political subdivision in which the smaller political subdivision is contained); *Houchins v. Plainos*, 110 S.W.2d 549, 555 (Tex. 1937) ("[W]e hold that while it is true that the city of Houston Heights has long since ceased to exist as a municipal corporation, still it yet exists for the purpose of holding a local option election to vote on the question of making it lawful to sell intoxicating liquors within the area originally voted dry."); *Coker v. Tex. Alcoholic Beverage Comm'n*, 524 S.W.2d 570, 572, 578–79 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (concluding that a change in a justice precinct boundary has no effect on the local option status of the original area and that a subsequent local option election must be conducted in the territory as it existed before the boundary change); *see also Coker*, 524 S.W.2d at 578–79 (rejecting the argument that the statutory provision that an election to change the status in "an area" applies only to an existing political subdivision and the argument that residents of a former justice precinct would be denied equal protection because of the difficulties of drawing the exact boundaries of the precinct as it existed almost a century before); Tex. Att'y Gen. Op. No. JM-1177 (1990) at 2–5 (rejecting the argument that an election is not required to change the local option status in a justice precinct because it would be administratively difficult for counties to conduct such elections in the area that formerly comprised a justice precinct (citing *Coker*, 524 S.W.2d at 579)).

### 3.    Richwood

In 1967, a majority of the voters in Richwood (located entirely within the County but not in Precinct 5) voted for the "[p]rohibition of the legal sale of beer" making Richwood "dry" for all alcoholic beverages. *Id.* at 7 ("Local Option Status: Changes to totally dry"). In 1968, however, the voters of Richwood voted for "[t]he legal sale of beer off premise only." *Id.* at 8. According to Exhibit B, after this election Richwood became "wet" for the sale of beer for off-premises consumption only. *Id.* ("Local Option Status: Changes to sale of beer off premise only").

## II.    Analysis

### A.    Local Option Status

The legal issue here is the "local option status" established by the prior local option elections in Precinct 5, Sweeny, and Richwood because a county-wide election cannot change such status within a justice precinct or a city located within the county. *See* TEX. ALCO. BEV. CODE ANN. §§ 251.72–.73, .80(a) (Vernon 2007).

First, a political subdivision retains the status resulting from an election until it is changed by another election specific to the same political subdivision. Section 251.72 of the Alcoholic Beverage Code provides that "an authorized voting unit *that has exercised* or may exercise the right of local option *retains the status adopted*, whether absolute prohibition or legalization of the sale of alcoholic beverages of one or more of the various types and alcoholic contents on which an issue may be submitted . . . , *until that status is changed* by a subsequent local option election *in the same authorized voting unit*." *Id.* § 251.72 (emphasis added); *see also* TEX. CONST. art. XVI, § 20(c); *Houchins v. Plainos*, 110 S.W.2d 549, 553 (Tex. 1937) (holding that a dry city annexed to a wet area "remained dry until it was voted wet at a subsequent election held in and for the same identical area which had theretofore voted dry"); *Coker v. Tex. Alcoholic Beverage Comm'n*, 524 S.W.2d 570, 574 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (holding "that a political subdivision which has once voted dry remains so until sale of alcoholic beverages is legalized by a wet vote in the same subdivision").

Second, "[t]o insure that each voter has the maximum possible control over the status of the sale of alcoholic beverages in the area where he resides," the results of an election held in a smaller political subdivision cannot be overriden by the results of an election in a larger political subdivision that encompasses the smaller political subdivision. TEX. ALCO. BEV. CODE ANN. § 251.73 (Vernon 2007). Section 251.73 provides that the status resulting from "a duly called election for [a] . . . city or town prevails against the status that resulted from . . . a duly called election in a justice precinct or county in which the . . . city or town, or any part of it is contained." *Id.* § 251.73(1). Similarly, the status resulting from "a duly called election for a justice precinct prevails against the status" resulting from "a duly called election in [a] . . . city or town in which the justice precinct is wholly contained or in a county in which the justice precinct is located." *Id.* § 251.73(2); *see also Coker*, 524 S.W.2d at 574 ("We conclude that [the constitutional and statutory provisions] give priority to [the vote of] the smaller subdivision . . . ."); *Myers v. Martinez*, 320 S.W.2d 862, 866 (Tex. Civ.

App.—San Antonio) ("The doctrine of local self-government requires that the will of the smaller unit shall control over the will of the larger unit."), *writ ref'd n.r.e.*, 326 S.W.2d 171 (Tex. 1959) (per curiam). And section 251.80 provides that "[w]henever a local option status is once legally put into effect as the result of the vote in a justice precinct, such status shall remain in effect until the status is changed as the result of a vote in the same territory that comprised the precinct when such status was established." TEX. ALCO. BEV. CODE ANN. § 251.80(a) (Vernon 2007).

Neither Alcoholic Beverage Code chapter 251 nor Election Code chapter 501 specifically defines the term "local option status" or "status." Nor do we find a judicial definition of these terms as relevant here. Section 251.72, however, suggests its meaning. *See id.* § 251.72; TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (providing that words and phrases not having acquired technical or particular meanings are to "be read in context and construed according to the rules of grammar and common usage").[7] Section 251.72 provides in relevant part that "an authorized voting unit . . . retains the *status adopted, whether absolute prohibition or legalization of the sale of alcoholic beverages . . .*, until *that status* is changed by a subsequent local option election in the same authorized voting unit." TEX. ALCO. BEV. CODE ANN. § 251.72 (Vernon 2007) (emphasis added). The italicized language immediately following "status" indicates that the term comprises the alcoholic beverages prohibited *or* legalized as a result of the exercise "of the right of local option" in the voting unit. *See id.* The phrase "local option" means "the latest expression of the will" or choice of the voters for or against the sale of liquor in their voting unit. *See Powell v. Smith*, 90 S.W.2d 942, 944 (Tex. Civ. App.—Fort Worth 1936, no writ); *see also id.* ("So long as this expression stands unchanged, no Legislatures, no court, no individual should seek to set it aside and hold it for naught—this is the very essence of local self-government."); BLACK'S LAW DICTIONARY 950 (7th ed. 1999) (defining "local option" as "[a]n option that allows a municipality or other governmental unit to determine a particular course of action without the specific approval of state officials"); THE NEW OXFORD AMERICAN DICTIONARY 1001 (2001) (defining "local option" as " a choice available to a local administration to accept or reject national legislation (e.g., concerning the sale of alcoholic liquor)").

Thus, it follows that "local option status" or "status" in this context means the choice of alcoholic beverages legalized or prohibited in a voting unit—the latest expression of the voters' will as to what alcoholic beverages may be sold in their area from the extensive "menu" provided under the statutory scheme. *See* TEX. ELEC. CODE ANN. § 501.035(b)–(f) (Vernon Supp. 2007) (listing the issues with respect to the various types and classifications of alcoholic beverages that may be submitted in a local option election); *Fox v. Burgess*, 302 S.W.2d 405, 408 (Tex. 1957) ("The evident intention of the Legislature in the adoption of [the predecessor statutory scheme for local option elections] was to provide that the majority might choose the desired type and classification of alcoholic beverages or to prohibit the sale altogether of all types if it so willed."). The choice of alcoholic beverages legalized or prohibited in a voting unit cannot be changed—made different by adding to or deleting from—except through another election specific to that voting unit. *See* TEX.

---

[7]The common meaning of the term "status" does not help us resolve what that term encompasses in the context of the local option provisions. *See* THE NEW OXFORD AMERICAN DICTIONARY 1665 (2001) (defining "status" as "relative . . . standing of someone or something" or "the position of affairs at a particular time").

ALCO. BEV. CODE ANN. § 251.72 (Vernon 2007); *see also* THE NEW OXFORD AMERICAN DICTIONARY 285 (2001) (defining the term "change" as "to make or become different"). Nothing in the statutory scheme indicates that a voting unit's choice of the legalized alcoholic beverages may be changed by the addition of alcoholic beverages not approved by elections specific to that unit. *See* TEX. ALCO. BEV. CODE ANN. §§ 251.72–.73 (Vernon 2007). *But see* Tex. Att'y Gen. Op. No. H-59 (1973) at 3–4 (concluding that a county-wide election would legalize the sale of alcoholic beverages not prohibited by local option elections in a justice precinct).

More significantly, by choosing the alcoholic beverages it desires to legalize, a voting unit implicitly chooses to remain "dry" with respect to the sale of all other alcoholic beverages. *See* TEX. ALCO. BEV. CODE ANN. § 251.71(a) (Vernon 2007); *Tillerson v. State*, 159 S.W.2d 502, 503 (Tex. Crim. App. 1942). By definition, "dry" and "wet" are relative terms. *Tillerson*, 159 S.W.2d at 503. An area is "dry" as to an alcoholic beverage "if the sale of that beverage is *unlawful* in the area." TEX. ALCO. BEV. CODE ANN. § 251.71(a) (Vernon 2007) (emphasis added). And an area is "wet" as to an alcoholic beverage "if the sale of that beverage is *lawful* in the area." *Id.* (emphasis added). Accordingly, an area is wet with respect to the alcoholic beverages or beverages legalized by one or more local option elections in that area and dry as to everything else. *See Tillerson*, 159 S.W.2d at 502–03 (determining that in a county where the "only local option election . . . was to permit 3.2 liquor by weight," the county was a "'dry area' as to the sale of whisky and other alcoholic beverages containing more than 3.2 percent alcohol by weight" and "a 'wet area' as to beer and those liquors which do not contain more than 3.2 percent of alcohol by weight"). Thus, a voting unit that votes to legalize the sale of certain alcoholic beverages does not need to affirmatively prohibit the sale of other "unlawful" alcoholic beverages in order to express the taxing unit voters' will against their sale.

A 1973 attorney general opinion suggests, however, that "local option status" is limited to prohibitory or inconsistent ballot issues. Attorney General Opinion H-59 considers, among other questions, whether the passage of a county-wide ballot measure for the sale of all alcoholic beverages would change the status of a precinct within the county that was "wet for the sale of beer." Tex. Att'y Gen. Op. No. H-59 (1973) at 1, 3–4. The opinion concludes that because "there is no *local option status of Precinct No. 2 which would prohibit the legalization* of all alcoholic beverages including mixed beverages on a county-wide basis, the local option status of Precinct No. 2 would be the same as the county until a different result was established by a subsequent precinct election should there ever be one." *Id.* at 4 (emphasis added).[8]

---

[8]Based on your conclusions, you appear to present a similar argument: Because the local option elections in Precinct 5 and Richwood pertained only to the sale of beer, while the 2007 county-wide election pertained to wine and mixed beverages as well as beer, Precinct 5's and Richwood's local option status was changed by the county-wide election with respect to the sale of wine and mixed beverages. *See* Request Letter, *supra* note 1, at 5–6. You conclude that after the 2007 election, the sale of beer remains completely prohibited in Precinct 5 and Sweeny, but the sale of wine and mixed beverages—excluding beer—will be permitted. *Id.* Similarly, you conclude that on-premises sale of beer remains completely prohibited in Richwood, but wine and mixed beverages—excluding on-premises sale of beer—may be sold there. *Id.* at 6.

Attorney General Opinion H-59's conclusion and analysis is inconsistent with the current statutory scheme under the Alcoholic Beverage Code.

First, under Alcoholic Beverage Code section 251.72, local option status encompasses not only the alcoholic beverages prohibited, but also those that are legalized. *See* TEX. ALCO. BEV. CODE ANN. § 251.72 (Vernon 2007); *see also id.* § 251.71(a) (defining "wet" and "dry"); *supra* p. 3.[9] And, sections 251.72 and 251.73 expressly and unambiguously ensure local choice and local control over the sale of alcoholic beverages. *See id.* §§ 251.72–.73; *see also id.* § 251.80(a) (addressing specifically justice precincts). These statutory provisions do not expressly limit "local option status" to inconsistent or prohibitory ballot measures or limit the local choice and control protection provided to inconsistent and prohibitory measures. *See id.* Attorney General Opinion H-59 was not constrained by these provisions nor did the opinion address the local choice and control principles embodied in these provisions. The substance of sections 251.72 and 251.73 was enacted and effective after the July 10, 1973 issuance date of Attorney General Opinion H-59. *See* Act of May 19, 1967, 60th Leg., R.S., ch. 723, § 71, 1967 Tex. Gen. Laws 1858, 1927 (law effective as of July 1973 when Attorney General Opinion H-59 was issued); Act of May 14, 1973, 63d Leg., R.S., ch. 219, § 2, 1973 Tex. Gen. Laws 508, 510–11 (adopting the substance of sections 251.72 and 251.73 effective August 27, 1973). The opinion was also issued before the Dallas court of appeals' 1975 decision, *Coker v. Texas Alcoholic Beverage Commission*, reiterated that article XVI, section 20(c) and the substance of sections 251.72 and 73 give "priority to the vote of the precinct over the vote of the county as a whole, with respect to both prohibition and legalization" of the sale of alcoholic beverages. *Coker*, 524 S.W.2d at 576.

Second, Attorney General Opinion H-59, in considering only prohibitory or inconsistent ballot measures, incorrectly assumes that with respect to any particular type of alcoholic beverages, the default local option status is "wet" rather than "dry."

In a 1937 opinion, the Texas Supreme Court explained that article XVI, section 20, adopted in 1935, authorized the sale of alcoholic beverages in the state, but preserved the "existing" dry status of counties, justice precincts, and cities until changed by subsequent local option elections in those areas:

> By the terms of this amendment the entire state, as such, is again made wet as to all intoxicating liquors; but with certain exceptions and limitations. In effect, this amendment contains provisions which

---

[9]The TABC's argument accords with this view. The TABC argues that "local option status" is "more than the specific issue mentioned in a ballot option." Instead, according to the TABC, it is "that combination of wet and dry law called into effect by the election." Brief from Lou Bright, General Counsel, Texas Alcoholic Beverage Commission, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 3 (Feb. 29, 2008) (on file with the Opinion Committee). Thus, "for example, the 'status' of Richwood is . . . wet for the sale of beer for off-premises consumption and dry for all other alcoholic beverages," and that "status can only be changed by an election in . . . Richwood." *Id.* Similarly, TABC continues, "this is true for the status within Precinct 5 . . . so that no sale of alcoholic beverages at all can be authorized within that territory except through a legalizing election conducted by the citizens within that territory." *Id.*

make any county, justice's precinct, or city, or town dry which was dry at the time it became effective. In other words, this amendment preserves the status quo as to dry areas as they existed at the time it became effective. *It therefore preserved as dry any county, justice's precinct, or city, or town which was dry when it went into effect. Of course, any such area has the right to become wet by so voting at an election legally ordered and held for that purpose under present local option statutes.*

*Houchins*, 110 S.W.2d at 555 (emphasis added).

The Texas Liquor Control Act (the "Act"), adopted in 1935 by the same Legislature that drafted the 1935 constitutional amendment, clarified that the "existing" default status of counties, justice precincts, and cities with respect to any particular type of alcoholic beverages was "dry" unless legalized by subsequent local option elections in those areas:

> As to any particular type of liquor, each county, justice precinct, incorporated city or town within this State *shall be deemed to be a "dry area"* unless such county, justice precinct, city or town, was a "wet area" at the time Section 20 of Article XVI of the Constitution became effective and has not since said time changed its status, or unless the sale of that particular type of liquor has been legalized by local option election in such county, justice precinct, city or town, since said time.

> The term *"wet area" shall be construed as including* in each particular instance *only liquors* of a type or liquors not exceeding in alcoholic content that *which have been legalized* by a valid local option election in the prescribed area.

Act of Nov. 14, 1935, 44th Leg., 2d C.S., ch. 467, § 1, sec. 23, 1935 Tex. Gen. Laws 1795, 1817 (emphasis added); *Coker*, 524 S.W.2d at 574–75 (discussing the Act); *see also Walker v. Meyers*, 266 S.W. 499, 501–02 (Tex. 1924) ("contemporaneous and practical construction of constitutional provisions by the Legislature, in the enactment of laws, has great weight and gives rise to a strong presumption that the construction rightly interprets the meaning of the provisions").

The Legislature's determination in the Act that the "existing" default status is "dry" is explained by the fact that counties, justice precincts, and cities were generally dry when article XVI, section 20 and the Act were adopted in 1935:

> *When [the federal]prohibition ended, Texas political subdivisions were generally "dry" by default,* meaning that the sale of liquor was prohibited. State law specified once again that legalization of liquor

sales reverted to a local determination by a petition-driven election process.

> *Counties, cities, and justice of the peace precincts are generally "dry" except where the voters have approved the sale of liquor . . . .* Local option liquor elections may also be held to prohibit the sale of alcohol in formerly "wet" political subdivisions.

Texas Secretary of State, Phil Wilson, Local Option Liquor Elections - Questions and Answers (Overview of Texas laws relating to the sale or prohibition of liquor) (emphasis added);[10] *see also* Justice Craig T. Enoch et al., *In re Callas Davis*: Texas Supreme Court to Interpret Alcoholic Beverage Election Law (March 11, 2008) ("The confusion [regarding Texas' alcoholic beverage laws] largely stems from the fact that, after Prohibition ended, political subdivisions were generally 'dry' by default, meaning the sale of alcoholic beverages was prohibited. From that point forward, the legalization of the sale of alcoholic beverages would be by local determination using a petition-driven election process.") (footnote omitted).[11]

Thus, Attorney General Opinion H-59 is inconsistent with the statutory framework for the sale of alcoholic beverages and is modified to the extent it is inconsistent with the conclusions reached here.

In sum, consistent with the statutory scheme, we believe for the purposes of sections 251.72, 251.73, and 251.80, the term "local option status" or "status" means the choice of alcoholic beverages expressly or implicitly prohibited or legalized as a result of the local option elections held in the voting unit. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (stating that statutory terms should not be given a meaning inconsistent with other provisions and they "should be interpreted consistently in every part of an act"). That choice cannot be changed except through an election held in the same voting unit.

Based on the information you provide, as a result of the local option elections held in 1958 and 1982, both Precinct 5 and Sweeny were "dry" for all alcoholic beverages because it was unlawful to sell any alcoholic beverages throughout Precinct 5. *See* Exhibit B, at 6 ("[Precinct 5] Local Option Status: Changes to totally dry"), 13 ("[Sweeny] Local Option Status remains totally dry"). And, after its local option elections in 1967 and 1968, Richwood was "wet" for beer sales for off-premises consumption only and "dry" for the sale of all other alcoholic beverages because it was lawful to sell only beer for off-premises consumption. *See id.* at 7 (after 1967 election, "Local Option Status: Changes to totally dry"), 8 (after 1968 election "Local Option Status: Changes to sale of beer off premise only"); *see also* TEX. ALCO. BEV. CODE ANN. § 251.71(a) (Vernon 2007) (providing that an area is "wet" as to an alcoholic beverage if the sale of that beverage is lawful and

---

[10]*Available at* http://www.sos.state.tx.us/elections/laws/liquorelections.shtml (last visited June 4, 2008).

[11]*Available at* http://www.texsupp.com/2008/03/11/in-re-calla-davis-texas-supreme-court-to-interpret-alcoholic-beverage-election-laws/ (last visited June 4, 2008).

"dry" if unlawful). We determine that this wet and dry description constitutes the respective "local option status" of Precinct 5, Sweeny, and Richwood; that status can be changed only by an election in the particular voting unit. Thus, the 2007 county-wide election has no effect in the three political subdivisions with respect to the sale of alcoholic beverages. *See* TEX. ALCO. BEV. CODE ANN §§ 251.72–.73, .80(a) (Vernon 2007). Accordingly, in answer to your first question, we conclude that the sale of wine is unlawful in Sweeny, and beer sales remain prohibited in Precinct 5 as they were before the 2007 election. In partial answer to your fifth and sixth questions, we conclude that the sale of mixed beverages is unlawful in Richwood and the on-premises sale of beer remains prohibited therein as was the case before the 2007 election.

### B. Permit Certifications

Your remaining questions ask about the certifications that the county clerk may make on applications for various types of permits for the sale of wine, beer, and mixed beverages for locations in Precinct 5, Sweeny, and Richwood and the types of permits that may be issued. These questions are premised on the assumption that the 2007 county-wide election effected some change in the alcoholic beverages that may be sold in these three areas. Because we conclude that the 2007 election did not effect a change in the three areas, we answer these questions in a summary form.

Before addressing your questions, we provide an overview of the permitting and certification provisions as relevant here. Any certifications and permits for the sale of alcoholic beverages must conform to the law. The Alcoholic Beverage Code provides for various permits related to the sale of alcoholic beverages. Among other specified types of permits and licenses, the code provides for a "Wine Only Package Store Permit," a "Wine and Beer Retailer's Permit," a "Wine and Beer Retailer's Off-Premise Permit," a "Temporary and Special Wine and Beer Retailer's Permit," a "Mixed Beverage Permit," a "Mixed Beverage Late Hours Permit," and a "Daily Temporary Mixed Beverage Permit." *See* TEX. ALCO. BEV. CODE ANN. chs. 24–28 (Vernon 2007 & Supp. 2007); *see also id.* chs. 69–71 (providing for retail dealers licenses for the sale of beer).

Section 11.37 of the Alcohol Beverage Code requires the county clerk of the county in which an application for a permit is made to certify "whether the location or address given in the application is in a wet area and whether the sale of alcoholic beverages for which the permit is sought is prohibited by any valid order of the commissioners court." *Id.* § 11.37(a) (Vernon 2007); *see also id.* § 61.37(a)–(b) (requiring similar certification for licenses). Again, under the Alcoholic Beverage Code, an area is "wet" with respect to "an alcoholic beverage of a particular type and alcoholic content if the sale of that beverage is lawful in the area" and "dry" if the "sale . . . is unlawful." *Id.* § 251.71(a).

### 1. Sweeny

Your second question relates to applications for Wine and Beer Retailer's Off-Premise Permits for locations in Sweeny. The holder of such a permit "may sell for off-premises consumption only . . . wine, beer, and malt liquors containing alcohol in excess of one-half of one percent . . . but not more than 17 percent by volume." *Id.* § 26.01(a) (Vernon Supp. 2007). Thus you

ask: If beer sales are unlawful in Sweeny, whether the county clerk is authorized to certify locations in Sweeny as a "wet area" for both wine and beer sales on the application for a Wine and Beer Retailer's Off-Premise Permit. Request Letter, *supra* note 1, at 3. This question is raised because, as you note, the code does not provide for a wine-only retailer's off-premises permit. *See id.* at 5. And it is an issue here because you believe that after the 2007 county-wide election, while beer remains prohibited, wine may be sold in Sweeny. *See id.* Because we conclude that the 2007 election did not change the local option status of Sweeny—dry for all alcoholic beverages—it remains dry for wine as well as beer. Thus, the county clerk cannot certify Sweeny as a "wet area" for the sale of beer and wine.

### 2.     Precinct 5

Your third and fourth questions ask about applications for both Mixed Beverage and Wine and Beer Retailer's Off-Premise Permits for locations in Precinct 5. Again, the holder of a Wine and Beer Retailer's Off-Premise Permit may sell wine, beer, and malt liquor. *See* TEX. ALCO. BEV. CODE ANN. § 26.01(a) (Vernon Supp. 2007). A Mixed Beverage Permit holder "may sell, offer for sale, and possess mixed beverages, including distilled spirits, for consumption on the licensed premises." *Id.* § 28.01(a) (Vernon 2007). The holder of such permit also may sell wine, beer, ale, and malt liquor. *See id.* § 28.01(c). You ask: If the county clerk cannot certify Precinct 5 as wet for beer, whether any certification should be made on the application form for Wine and Beer Retailer's Off-Premise Permit or Mixed Beverages Permit furnished by the TABC. Request Letter, *supra* note 1, at 3. You also ask: If the county clerk inserts qualifying language such as "beer is excluded from this certification" on the application form for Wine and Beer Retailer's Off-Premise Permit or Mixed Beverages Permit, whether the TABC is authorized to issue a modified permit for the retail sale of wine-only off-premises or a modified permit for the sale of mixed beverages excluding beer. *Id.* at 3–4.

Both of your questions are premised on the conclusion that while the sale of beer may be prohibited in Precinct 5, the sale of wine or mixed beverages—excluding beer—may be authorized therein after the 2007 county-wide election. And the questions are raised because, as you note, the code does not provide for a wine-only retailer's off-premises permit; nor does the code provide for a mixed beverage permit that excludes the sale of beer. *See id.* at 5, 6 n.4; *see also* TEX. ALCO. BEV. CODE ANN. tit. 3 (Vernon 2007 & Supp. 2007) (providing for various permits and licenses). Because we conclude that the 2007 election did not change the local option status of Precinct 5—dry for all alcoholic beverages—the sale of wine and beer and mixed beverages is unlawful in the precinct. Accordingly, the county clerk cannot certify "wet" for beer and wine, mixed beverages, or make any of the proposed modifications even assuming that such modifications were permitted.

### 3.     Richwood

Your fifth and sixth questions relate to applications for Mixed Beverage Permits for locations in Richwood. Your first ask whether the county clerk may certify locations in Richwood as "wet" or whether the county clerk should decline or qualify the certification as excluding beer, given Richwood's limitation of beer sales to off-premises only. Request Letter, *supra* note 1, at 4. You

also ask: "If on-premises sale of beer remains prohibited in Richwood," whether a Mixed-Beverage Permit, which by definition includes the sale of beer, may be issued for locations in Richwood. *See id.*

Again, your questions assume that the 2007 county-wide election legalized to some extent the sale of mixed beverages in Richwood. Because we conclude that the election did not change the local option status of Richwood—sale of beer for off-premises consumption only—it remains dry for all other alcoholic beverages. Thus, the county clerk cannot certify locations in Richwood as being in a "wet area" for the sale of mixed beverages and a Mixed Beverage Permit may not be issued for such locations.

**S U M M A R Y**

Under the Alcoholic Beverage Code, the local option status of a voting unit can be changed only by an election held in that unit. Additionally, the local option status resulting from elections held in a justice precinct or a city contained in a county prevails against the status resulting from elections held in the larger county. Consistent with the statutory scheme for local option elections, the term "local option status" or "status" means the choice of alcoholic beverages expressly or implicitly prohibited or legalized as a result of the local option elections held in the smaller voting unit. That choice cannot be changed except through an election held in the same voting unit.

The 2007 county-wide election held in Brazoria County did not change the local option status of former Justice Precinct No. 5 ("Precinct 5"), the City of Sweeny ("Sweeny"), and the City of Richwood ("Richwood") resulting from their prior local option elections. Accordingly, wine and beer sales are unlawful in Sweeny, and beer sales remain prohibited in Precinct 5 as they were before the 2007 election. Thus, the county clerk cannot certify a location in Sweeny as being in a "wet area" for the sale of beer and wine on an application for a Wine and Beer Retailer's Off-Premise Permit. The sale of wine and beer and mixed beverages is unlawful in Precinct 5. Thus, the county clerk cannot certify locations in Precinct 5 as being in a "wet area" for the sale of beer and wine on applications for Wine and Beer Retailer's Off-Premise Permits or for the sale of mixed beverages on applications for Mixed Beverage Permits. The sale of mixed beverages is unlawful in Richwood, and the on-premises sale of beer remains prohibited therein as was the case before the 2007 election. Thus, the county clerk cannot certify a location in Richwood as being in a "wet area" for the sale of mixed beverages on an application for a Mixed Beverage Permit, and such a permit may not be issued for a location in Richwood.

Attorney General Opinion H-59 is modified to the extent it is inconsistent with the conclusions reached here.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee