In re Calla DAVIS, Melvin Hurst III, and Ann B. Hearn, Relators.

No. 07–0147.

Supreme Court of Texas.

Argued Dec. 5, 2007.

Delivered Aug. 29, 2008.

Rehearing Denied Nov. 14, 2008.

Craig T. Enoch, Melissa Prentice Lorber, Alejandro Sin Valdes, Winstead PC, Austin, TX, Arthur J. Anderson, Jeffrey A. Hage, Winstead Sechrest & Minick, Dallas, TX, David Fowler Johnson, Winstead PC, Fort Worth, TX, for Relator.

Robert L. Schell, Grant Hugh Brenna, Assistant District Attorneys, Craig M. Watkins, Dallas County District Attorney, Dallas, TX, for Real Party in Interest, Dallas County Commissioners Court.

Aaron Paul Graft, Brown & Hofmeister, LLP, Richardson, TX, James Michael Coffman, Legal Department, Craig B. Florence, Gardere Wynne & Sewell LLP, Dallas, TX, for Amici.

Deborah G. Hankinson, William Richard Thompson III, Hankinson Levinger LLP, Andrew L. Siegel, Timothy D. Zeiger, Leland C. De la Garza, Shackelford, Mewlton & McKinley, LLP, John M. Hill, Sim Israeloff, Cowles & Thompson, P.C., Dallas, TX, for Real Party in Interest, Town of Addison.

Chief Justice JEFFERSON delivered the opinion of the Court.

Both our state and nation have struggled with regulating the sale of alcoholic beverages, vacillating between outright prohibition and widespread legalization.[1]

---

1. *See* U.S. CONST. amend. XVIII, *repealed by*    U.S. CONST. amend. XXI; *Houchins v. Plainos,*

In parts of Texas, the debate rages on. Our constitution authorizes localities to decide, through local option elections, whether they will be "wet" or "dry." Tex. Const. art. XVI, § 20; *see also* Tex. Alco. Bev. Code § 251.71(a) (defining "dry areas" as those in which the sale of "an alcoholic beverage of a particular type and alcohol content . . . is unlawful" and "wet areas" as those in which such sales are legal). Once voters in a justice precinct have elected wet or dry status, that status remains in effect until voters in that same territory, by another local option election, change it. Tex. Alco. Bev.Code § 251.80(a). Here, relators seek an order requiring the Dallas County Commissioners Court to call an election to change a justice precinct from dry to wet. Because that precinct's territory differs from that of the justice precincts that formerly voted dry, however, such an election would be improper. *See id.* We deny the petition for writ of mandamus.

In 1877, former Justice of the Peace Precinct 2 ("old Precinct 2") in Dallas County voted dry in a local option election, and former Justice of the Peace Precinct 3 ("old Precinct 3") did so a year later.[2] Subsequently, the Commissioners Court redrew precinct lines, replacing old Precincts 2 and 3 with new precincts. Current Justice of the Peace Precinct 3 encompasses parts of old 2 and old 3, as well as territory not belonging to either former precinct. Additionally, old 2 and old 3 extend beyond current Precinct 3's boundaries. *See* Appendix.

Relators Calla Davis, Melvin Hurst III, and Ann B. Hearn state that they initiated the process for setting local option elections in those areas as part of an effort to legalize the sale of alcoholic beverages in Dallas County's dry areas. They contend the Dallas County Elections Department told them that current Precinct 3 included those areas within Dallas County that were dry (presumably, old Precincts 2 and 3), and the Secretary of State's office had advised that a local option election to change the status of those precincts should begin with petitions designated for current, rather than historical, precincts. Accordingly, qualified voters of Dallas County applied for a petition for a local option election to legalize the "sale of beer and wine for off-premise consumption only . . . [i]n the Justice of the Peace Precinct 3, Dallas County, Texas." The Elections Department issued the petitions in October 2006, and they were circulated, signed, and returned. The Elections Administrator certified that the petitions satisfied all statutory requirements, and the Elections Department recommended that the Commissioners Court order a local option election to be held within Precinct 3's current boundaries. The Department also noted that Dallas County would be required to cover the cost of the election, estimated to be $203,000. The matter was placed on an addendum to the February 13, 2007 Commissioners Court agenda.

At the February 13 meeting, the county attorney informed the commissioners that

130 Tex. 413, 110 S.W.2d 549, 551–52 (1937) (describing 1919 Texas constitutional amendment prohibiting the sale of alcoholic beverages and 1935 amendment repealing that provision); *see also* The Handbook of Texas Online, Prohibition http://www.tshaonline.org/handbook/online/articles/PP/vap1.html (describing state prohibition laws and their subsequent repeal, after which "the prohibition question reverted to the local level")(all Internet materials as visited August 27, 2008, and available in Clerk of Court's case file).

**2.** By 1895, fifty-three of Texas' 239 counties had, through local option elections, voted dry, and another seventy-nine were partly dry. *See* The Handbook of Texas Online, Prohibition http://www.tshaonline.org/handbook/online/articles/PP/vap1.html.

old Precinct 2 had voted dry and that the law therefore required the election to be called in that historical precinct. The commissioners discussed whether to order the election under the boundaries suggested by relators—in new Precinct 3—or to instead set the boundaries of old Precinct 2 and then order an election only after being presented with petitions signed by voters in the old precincts. The county attorney advised that the latter course would be the more prudent. After an additional presentation by the Public Works Department (which, along with the Elections Department, drew maps delineating the boundaries of old Precinct 2, old Precinct 3, and current Precinct 3), the Commissioners Court "denie[d] the Dallas County Elections Department's request to order a Local Option Election ... in [new] Precinct 3 and establishe[d] the boundaries of [old] Precinct 2 as of March 8, 1877 for the purpose of a local option election."

Relators contend that the Dallas County Commissioners Court is required by law to order a local option election in Justice Precinct 3, Dallas County, Texas, and they seek a writ of mandamus directing the commissioners to do so.[3] TEX. ELEC.CODE § 273.061 (authorizing this Court to issue a writ of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election"). The court of appeals denied relief, 269 S.W.3d 612, and, after hearing argument and considering the merits of the claim, we do too.

Relators argue that, once the Elections Administrator certified the petitions and the Elections Department recommended that the Commissioners Court order the local option election, the Court had a ministerial duty to do so, and its refusal warrants mandamus relief. The Commis-

sioners Court counters that it was not presented with a "proper petition" and thus had no duty to order the election. To consider these claims, we must first examine the constitutional and statutory provisions at issue.

Article XVI, section 20, of the Texas Constitution, authorizes the Legislature to enact laws whereby localities may periodically determine whether they will be wet or dry:

(b) The Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

(c) In all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection

---

**3.** Quiktrip Corporation, 7–Eleven, Inc., the Texas Restaurant Association, and the Texas Retailers Association submitted amicus curiae briefs. TEX.R.APP. P. 11.

shall not prohibit the sale of alcoholic beverages containing not more than 3.2 percent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature.

TEX. CONST. art. XVI, § 20.

Chapter 501 of the Election Code and chapter 251, subchapter D of the Alcoholic Beverage Code effectuate these constitutional requirements. Section 251.80(a) of the Alcoholic Beverage Code provides:

Whenever a local option status is once legally put into effect as the result of the vote in a justice precinct, such status shall remain in effect until the status is changed as the result of a vote in the same territory that comprised the precinct when such status was established. If the boundaries of the justice precinct have changed since such status was established, the commissioners court shall, for purposes of a local option election, define the boundaries of the original precinct. A local option election may be held within the territory defined by the commissioners court as constituting such original precinct.

TEX. ALCO. BEV.CODE § 251.80(a).

We must decide whether a vote in current Precinct 3 would be effective to change old Precincts 2 and 3 from dry to wet. Before section 251.80 was enacted in 1989, we discussed the procedure to go from dry to wet in an area whose boundaries had changed. *See Houchins v. Plainos*, 130 Tex. 413, 110 S.W.2d 549 (1937); *see also* Act of May 17, 1989, 71st Leg., R. S., ch. 435, § 2, 1989 Tex. Gen. Laws 1582, 1582. In 1912, the qualified voters in the city of Houston Heights voted the city dry in a local option election. *Houchins*, 110 S.W.2d at 552. In 1918, Houston Heights was annexed by the city of Houston. *Id.*

at 553. We noted that a 1935 constitutional amendment, making the entire state wet, except those areas that had previously voted dry, did not make Houston Heights wet despite its annexation by Houston:

[The amendment] preserved as dry any county, justice's precinct, or city, or town which was dry when it went into effect. Of course, any such area has the right to become wet by so voting at an election legally ordered and held for that purpose under present local option statutes. In this connection, however, we again note that such election must be held in the same area that originally voted dry. As to the case at bar we hold that while it is true that the City of Houston Heights has long since ceased to exist as a municipal corporation, still it yet exists for the purpose of holding a local option election to vote on the question of making it lawful to sell intoxicating liquors within the area originally voted dry.

*Houchins,* 110 S.W.2d at 555 (noting that "it was certainly the law" at the time of annexation that "when an area voted dry it remained dry until it was voted wet at a subsequent election held in and for the same identical area which had theretofore voted dry, and the change, or even abolition, of the political or corporate entity which comprised such area did not alter this fact or rule of law"); *accord Jackson v. State,* 135 Tex.Crim. 140, 118 S.W.2d 313, 315 (1938) ("Such liquor must come back only in the same manner as it went out, regardless of the fact that a larger area, including the lesser dry area, may have voted for its return."); *Ex parte Fields,* 86 S.W. 1022, 1023 (Tex.Crim.App. 1905) ("We concede that the old justice precinct in which local option was adopted no longer exists as a justice's precinct for judicial purposes, but it does exist for the purpose of local option. That status was

ingrafted on it while it existed as a justice precinct, and will continue until it is repealed by the voters of that territory."); *Coker v. Tex. Alcoholic Beverage Comm'n,* 524 S.W.2d 570, 572 (Tex.Civ.App.–Dallas 1975, writ ref'd n.r.e.).

Not only does section 251.80 codify this result, it provides some guidance on what to do when boundaries have changed, permitting commissioners courts to redraw boundaries and authorizing local option elections within the old boundaries. *See* Op. Tex. Att'y Gen. No. JM–1177 (1990) (noting that "[s]ection 251.80 codifies the longstanding judicial interpretation that subsequent elections must be held in the territory as originally comprised"). But the statute explicitly requires a vote in the "territory ... constituting such original precinct," and an election in new Precinct 3 would not change old Precincts 2 and 3 from dry to wet. Tex. Alco. Bev.Code § 251.80(a); *see also* Op. Tex. Att'y Gen. DM–44 (1991) (noting that section 251.80 "requires an election attempting to change the local option status of a justice precinct to be conducted, not in the precinct as it exists at the time of the petition for the election, but in the territory that comprised the justice precinct when the local option status was established"). Accordingly, the petitions presented here were not "proper," Tex. Elec.Code § 501.021, and the Commissioners Court had no duty to order the local option election in current Precinct 3.

In the alternative, Relators say the Commissioners Court must order a local option election in that part of old Precinct 2 now located in current Precinct 3. This too would be improper. Not only do portions of old Precinct 2 extend beyond the boundaries of current Precinct 3, but the petitions here are to legalize the sale of beer and wine in "Justice of the Peace Precinct 3, Dallas County, Texas." The Election Code provides:

> *On proper petition* by the required number of voters of a county, *justice precinct,* or municipality in the county, the commissioners court shall order a local option election *in the political subdivision* to determine whether the sale of alcoholic beverages of one or more of the various types and alcoholic contents shall be prohibited or legalized *in the political subdivision.*

Tex. Elec.Code § 501.021 (emphasis added). Here, while petitions were returned for current Precinct 3, an election in current Precinct 3 would not affect the dry status of old Precincts 2 and 3. Petitions must be addressed to the territory whose status will be changed by local option election—here, old Precincts 2 and 3—and only then may the Commissioners Court order a local option election in old Precincts 2 and 3.

Relators urge that the petitions as presented nonetheless provide a legal basis for calling an election in old Precinct 2. They contend that it would be impossible to obtain petitions signed by voters in historic precincts, because those boundaries cannot be discerned before the Commissioners Court has drawn them, and the Court's authority to draw those boundaries arises only after "proper petition" has been made.

We disagree. While the statute does not explicitly authorize the commissioners to draw those boundaries before a petition has been presented, it does not prohibit them from doing so either. Tex. Alco. Bev.Code § 251.80. In the context of a local option election to change the status of a historical justice precinct, we conclude that the Commissioners Court must, upon request, delineate the boundaries of that historical precinct. After it has done so, qualified voters of that historical precinct

may apply for local option election petitions. Tex. Elec.Code § 501.023(a). If the petitions are returned and certified, the Commissioner Court must then order a local option election for that historical precinct. *Id.* § 501.021.

We appreciate the Relators' concern that defining boundaries of areas that have changed over time is laborious. In *Coker,* the court of appeals confronted this dilemma and held that the Commissioners Court may "draw [ ] a line approximating the original boundaries," and "[i]ts determination of the boundaries would not be exercised under its general power to fix precinct boundaries, but would be an administrative determination incidental to its power to order an election, and would control unless clearly arbitrary." *Coker,* 524 S.W.2d at 579; *see also* Op. Tex. Att'y Gen. JM–1177 (rejecting argument that local option election in former precinct would present insurmountable administrative difficulties). Subsequently, the Legislature enacted section 251.80(a), authorizing the commissioners to fix boundaries of historical precincts for purposes of local option elections. *See* Op. Tex. Att'y Gen. DM–44 (noting that section 251.80 "codifies the holding of *Coker* " and "permit[s] the commissioners court to resolve situations in which, due to lost or ambiguous records or other reasons, it is not possible to establish definitively the boundary of a former justice precinct"). While the commissioners' discretion in doing so is not unbounded, their decision will govern unless it is arbitrary. *See id.*

Relators contend that section 251.80 is unconstitutional as applied to them, because it creates a "Catch–22 that allows voters to petition for elections that will never be called because the Commissioners Court will refuse to draw boundaries and set the elections." Here, however, the Commissioners Court was not presented with "proper petition[s]" for old Precincts 2 and 3, so it had no duty to order a local option election for those historical precincts. If the Commissioners Court refused, upon proper request, to fix the boundaries of historical precincts, relators could seek mandamus relief. Tex. Elec. Code § 273.061. In this case, however, the commissioners fixed those boundaries. Relators have not shown that section 251.80 is unconstitutional as applied to them nor that they are entitled to mandamus relief.

We deny the petition. Tex.R.App. P. 52.8(a).