

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00300-CV

MARY HORN, HUGH COLEMAN, RON MARCHANT, BOBBIE J. MITCHELL, AND ANDY EADS, IN THEIR CAPACITIES AS DENTON COUNTY JUDGE AND COMMISSIONERS OF DENTON COUNTY, TEXAS AND ERIC D. STANLEY

APPELLANTS

V.

AL GIBSON

APPELLEE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

Appellee Al Gibson timely instituted a contest to the 2009 local option election held in current Justice Precinct 2 of Denton County, alleging that the election, which legalized the sale of all alcoholic beverages, including mixed

beverages, is void because it did not encompass all of the territory in old Justice Precincts 3 and 6, both of which are partly contained within the territory of current Precinct 2 and voted dry many years ago. Appellants Mary Horn, Hugh Coleman, Ron Marchant, Bobbie J. Mitchell, and Andy Eads—in their capacities as Denton County Judge and Commissioners of Denton County, Texas—and Eric D. Stanley argued that the 2009 local option election is not void because it was held in the exact same territory—current Precinct 2—as an uncontested, valid 2005 local option election that legalized the sale of beer and wine. The trial court granted Gibson summary judgment on his election contest claim and denied Appellants' motions for summary judgment on the same claim. Because the statutory framework for local option elections required the 2009 local option election to be held in the same territory as the 2005 local option election, we will reverse the trial court's final judgment and render judgment that Gibson take nothing on his election contest claim. We will affirm the trial court's order denying Stanley's motion to disqualify.

## II. BACKGROUND

Old Precinct 6 and old Precinct 3 voted dry in 1884 and 1901, respectively. Thereafter, the Denton County Commissioners Court redrew the precincts' lines. Current Precinct 2 encompasses parts of old Precinct 3 and old Precinct 6 as well as additional territory not contained within either of those precincts. The boundaries of old Precinct 3 and old Precinct 6 extend beyond the territory constituting current Precinct 2.

2

In August 2005, the Commissioners Court issued an order calling for a local option election to be held in current Precinct 2 in November 2005 for the legal sale of beer and wine. The proposition passed, and the Commissioners Court issued an order on November 18, 2005, approving the results. No one instituted a contest of the election.

On March 3, 2009, the Commissioners Court issued an order calling for a local option election to be held in current Precinct 2 for the legal sale of all alcoholic beverages, including mixed beverages. The proposition passed, and the Commissioners Court issued an order on May 14, 2009, approving the results.

Gibson timely instituted a contest of the 2009 local option election, suing Horn, Coleman, Marchant, Mitchell, and Eads in their official capacities. Stanley, a registered voter in current Precinct 2 who heads the organization that sponsored the proposition, filed a plea in intervention against Gibson, seeking a declaration that the 2009 local option election is valid. All parties moved for summary judgment. After the trial court granted an interlocutory summary judgment in favor of Gibson on his election contest claim and denied Appellants' motions for summary judgment, Stanley filed a motion to disqualify the trial court judge, the Honorable Jake Collier, based on election code section 231.004. Sitting by assignment, the Honorable Donald J. Cosby denied the motion to disqualify; entered an order clarifying that the summary judgment order signed by

3

Judge Collier was not a final, appealable order; and signed a final judgment, providing in part "that the Election is void." This appeal followed.

## III. DISQUALIFICATION

In his first issue, Stanley argues that the trial court abused its discretion by denying his motion to disqualify Judge Collier pursuant to election code section 231.004. *See* Tex. Elec. Code Ann. § 231.004(a) (West 2010). Gibson responds that Stanley waived his ground for disqualification because he did not move to disqualify Judge Collier until after Judge Collier presided over the hearing and signed the interlocutory order on the parties' motions for summary judgment.

Generally, a judge in Texas may be removed from a case because he or she is constitutionally disqualified, disqualified under a statute, or disqualified or recused under rules promulgated by the supreme court. *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding). Disqualification on constitutional grounds cannot be waived, but disqualification on grounds other than express constitutional grounds may be waived. *Esquivel v. El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 83, 87 (Tex. App.—El Paso 2005, no pet.); *see Buckholts ISD v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982). The Texas constitution provides that no judge shall sit in a case (1) "wherein the judge may be interested"; (2) "where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by

4

law"; or (3) "when the judge shall have been counsel in the case." Tex. Const. art. 5, § 11.

Stanley does not contend that Judge Collier was disqualified due to connection or counsel. Rather, Stanley argues that election code section 231.004 "is a legislative determination of the type of *interest* that constitutionally disqualifies a judge from presiding in the case." [Emphasis added.] However, the constitutional interest of a judge, to mandate his disqualification, must be a direct pecuniary or property interest in the subject matter of the litigation. *Bank of Tex., N.A., Trustee v. Mexia*, 135 S.W.3d 356, 361 (Tex. App.—Dallas 2004, pet. denied). A remote or problematic interest or one merely in the legal question involved will not suffice. *Id.* Here, there is no evidence that Judge Collier had any direct pecuniary or property interest in the subject matter of the election contest litigation, and the authorities relied on by Stanley do not support his argument that election code section 231.004 is now a constitutional "interest," as that term is defined, such that Stanley did not waive his ground for disqualification. *See id.*; *see also* Tex. Elec. Code Ann. § 231.004(b) ("*If a contest is filed in which a judge is disqualified under Subsection (a) . . . .*") (emphasis added). Accordingly, we hold that Stanley waived his ground for disqualification when he filed it after the trial court had already heard the parties' motions for summary judgment and signed the interlocutory order on the motions for summary judgment. *See* Tex. R. Civ. P. 18a (requiring motion for

5

disqualification to be filed at least ten days before date set for trial or other hearing).  We overrule Stanley's first issue.

## IV. ELECTION CONTEST

Horn, Coleman, Marchant, Mitchell, and Eads in their only issue and Stanley in his second issue argue that the trial court erred by granting Gibson summary judgment on his election contest claim and by denying their motions for summary judgment on the same claim.  Appellants contend that because the election code establishes a conclusive presumption that a local option election "is valid and binding in all respects on all courts" in the absence of a timely instituted election contest, the local option status allowing the sale of beer and wine was "legally put into effect" as a result of the 2005 local option election held in current Precinct 2 when no party timely instituted a contest to the election.  *See* Tex. Elec. Code Ann. § 501.155(c) (West 2010); Tex. Alco. Bev. Code Ann. § 251.80(a) (West 2007).  Therefore, to carry out any change in the local option status of current Precinct 2, Appellants argue that the Commissioners Court must have ordered a subsequent local option election in "the same territory that comprised the precinct when such status was established"—the boundaries establishing current Precinct 2.  *See* Tex. Alco. Bev. Code Ann. § 251.80(a). Because that is precisely what happened, the 2009 local option election legalizing the sale of all alcoholic beverages, including mixed beverages, was valid, according to Appellants.

6

Relying heavily on alcoholic beverage code section 251.80(a) and several cases that focus their analysis on the same requirement set out in that statute, Gibson argues that because old Precinct 3 and old Precinct 6 voted dry years ago, the 2009 local option election is void because it used territory—current Precinct 2—different from the territory that had previously voted dry—old Precinct 3 and old Precinct 6. He casts aside election code section 501.021(c)'s conclusive presumption, arguing that the 2005 local option election is irrelevant to the 2009 local option election because the "illegal" 2005 local option election was also held in the wrong territory and, therefore, did not change the local option status of old Precinct 3 and old Precinct 6 from dry to wet. To the extent that there is any conflict between the alcoholic beverage code and the election code, Gibson argues that the alcoholic beverage code controls.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

Article XVI, section 20(b) of the Texas constitution provides as follows:

> The Legislature shall enact a law *or laws* whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time

whether the sale of intoxicating liquors for beverage purposes shall
be prohibited or legalized within the prescribed limits . . . .

Tex. Const. art. XVI, § 20(b) (emphasis added). Each and every section of both chapter 501 of the election code and chapter 251, subchapter D, of the alcoholic beverage code effectuates this constitutional requirement. *See In re Davis*, 269 S.W.3d 581, 584 (Tex. 2008); *see also* Tex. Elec. Code Ann. §§ 501.001–.155 (West 2010); Tex. Alco. Bev. Code Ann. §§ 251.71–.82 (West 2007).

Among other "Miscellaneous Local Option Provisions" contained in subchapter D of section 251 of the alcoholic beverage code, section 251.80(a) provides,

> (a)  Whenever a local option status is once legally put into effect as the result of the vote in a justice precinct, such status shall remain in effect until the status is changed as the result of a vote in the same territory that comprised the precinct when such status was established.

Tex. Alco. Bev. Code Ann. § 251.80(a); *see* Tex. Const. art. XVI, § 20(c). In the attorney general's opinion, section 251.80 "codifies the long-standing judicial interpretation that subsequent elections must be held in the territory as originally comprised." Tex. Att'y Gen. Op. No. JM-1177 (1990). Indeed, as Gibson stresses, Texas courts, including this court, have consistently held that a territory's local option status remains in effect until voters in that same territory alter the status. *See, e.g., Davis*, 269 S.W.3d at 582, 584–85 ("Once voters in a justice precinct have elected wet or dry status, that status remains in effect until voters in that same territory, by another local option election, change it."); *Houchins v. Plainos*, 130 Tex. 413, 421, 110 S.W.2d 549, 553 (1937) (holding

8

that dry territory of dissolved municipality that was annexed by other wet municipality "remained dry until it was voted wet at a subsequent election held in and for the same identical area which had theretofore voted dry"); *Coker v. Tex. Alcoholic Beverage Comm'n*, 524 S.W.2d 570, 573–74 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (reasoning that countywide local option election did not alter local option status of justice precinct); *Powell v. Smith*, 90 S.W.2d 942, 943–44 (Tex. Civ. App.—Fort Worth 1936, no writ) (reasoning that countywide local option election did not alter local option status of justice precinct). But resolution of this issue does not depend upon a mere application of the facts of this case to section 251.80(a)'s legislatively prescribed condition for altering a territory's local option status.

As mentioned, the statutes enacted to effectuate article XVI, section 20 are also codified in chapter 501 of the election code. *See Davis*, 269 S.W.3d at 584. The final section in chapter 501 of the election code, entitled "Election Contest," provides that "[i]f an election contest is not timely instituted, *it is conclusively presumed that the election is valid and binding in all respects on all courts*." Tex. Elec. Code Ann. § 501.155(c) (emphasis added). Our primary objective when construing a statute is to give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We rely on the plain and common meaning of the text unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). We presume

9

that the legislature intended for the law to comply with the federal and state constitutions and to achieve a just and reasonable result. Tex. Gov't Code Ann. § 311.021(1), (3) (West 2005).

The legislature used clear and unambiguous language in section 501.155(c). The statute reveals an intent to bring both finality and validity to a local option election when there is no timely instituted contest. In light of the language used, both the finality and validity of the local option election are meant to be absolute. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (reasoning that every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must be presumed to have been excluded for a purpose). For example, section 501.155(c) does not create a rebuttable presumption that a local option election is valid and final; instead, it creates a conclusive presumption that an election is valid and final. Tex. Elec. Code Ann. § 501.155(c). If the legislature had other intentions, it could have worded the statute differently, as it had done in other legislation, but it did not. *See, e.g.*, Tex. Fam. Code Ann. § 153.131(b) (West 2008) ("It is a *rebuttable* presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child.") (emphasis added).

The local option election is also "valid and binding" not in *some* respects of a local option election, but in "*all* respects" of a local option election. Tex. Elec. Code Ann. § 501.155(c). The legislature has not defined "respects," but the court

10

of criminal appeals has addressed predecessor statutes to election code section 501.155(c) on several occasions and construed the statutes to prohibit challenges to "irregularities" in an election. In *Evans v. State*, the court of criminal appeals stated,

> This statute is not only constitutional, but is a salutary provision of the election law. It does not deprive appellant of life, liberty, or property. The contest of an election is an action in rem, and not in personam, and after the expiration of 60 days or 30 days, as the case may be, all parties are inhibited under the statute from contesting the regularity of an election. . . . The statute simply serves as a statute of limitation and repose against any one contesting *irregularities* thereof after the expiration of 60 days.

55 Tex. Crim. 450, 450–51, 117 S.W. 167, 167–68 (1909) (emphasis added) (construing Act of May 14, 1907, 30th Leg., 1st C.S., ch. 8, § 1, 1907 Tex. Gen. Laws 447–48). In *Patton v. State*, the court of criminal appeals similarly reasoned, "When no contest is filed within the time allowed, the order of the commissioners' court declaring the result of the election is final and not subject to be collaterally attacked upon the trial of a criminal case because of claimed *procedural defects or irregularities in the election*." 157 Tex. Crim. 252, 254, 248 S.W.2d 491, 493 (1952) (emphasis added) (construing former article 666-40a of the Texas Liquor Control Act); *see also Hutson v. Smith*, 191 S.W.2d 779, 784 (Tex. Civ. App—Galveston 1945, no writ) (stating that article 666-40a of the Texas Liquor Control Act "was lifted bodily from the act of 1907").

We do not construe the court of criminal appeals's references to "irregularities" in a local option election as any limitation upon the applicability of election code section 501.155(c) to a claim of noncompliance with alcoholic

11

beverage code section 251.80(a).  In other words, we construe alcoholic beverage code section 251.80(a)'s requirement as one of the "respects" of a local option election that section 501.155(c) references.  *See* Tex. Alco. Bev. Code Ann. § 251.80(a); Tex. Elec. Code Ann. § 501.155(c).  If the legislature had intended to carve out a specific exception to section 501.155(c) and permit perpetual challenges to local option elections on the ground that the election was held in the wrong territory contrary to section 251.80(a), it could have done so at some point over the decades that the statute has existed, but it has not.  *See, e.g., McIntyre v. Ramirez*, 109 S.W.3d 741, 744, 748 (Tex. 2003) (construing Good Samaritan statute and reasoning that "had the Legislature intended to except from the statute all doctors who provide care in hospitals, it could have said so without carving out the specific exceptions for certain doctors or medical personnel").

Gibson directs us to *Patton v. Texas Liquor Control Board*, a case in which the Third Court of Appeals held that a justice precinct remained dry because a subsequent election held in only part of the same justice precinct rendered the election void.  293 S.W.2d 99, 101 (Tex. Civ. App.—Austin 1956, writ ref'd n.r.e).  The court of civil appeals refused to uphold the subsequent election on the basis that the election was conclusively presumed valid, reasoning as follows:

> If construed as applicable here then such statute would be of doubtful constitutionality because it would create or destroy, by inaction, the status of an area as dry or wet not defined by but in the face of the Constitution which prescribes, not voting boxes, but other well-recognized local option districts.

12

*Id.* at 102. We are not convinced by *Patton*'s analysis because the court in that case assumed that the statute was unconstitutional. *See id.* In this case, Gibson does not challenge the constitutionality of section 501.155(c).

We disagree with *Patton*'s analysis and Gibson's argument for another reason. The Constitution of the State of Texas vests "[l]egislative power" in our legislature. *See* Tex. Const. arts II § 1, III § 1. "Legislative power" is defined broadly in Texas and includes the power to set public policy, to provide details of the law, to promulgate rules and regulations to apply the law, and to ascertain conditions upon which existing laws may operate. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873, 878 (Tex. 2000). Article XVI, section 20 of the Texas constitution expressly authorizes the legislature to enact "laws" for purposes of local option elections, consistent with the constitution's vesting lawmaking power in the legislature. *See Davis*, 269 S.W.3d at 583 ("Article XVI, section 20, of the Texas Constitution, authorizes the legislature to enact *laws* whereby localities may periodically determine whether they will be wet or dry.") (emphasis added). "So long as it operates within the constitutional mandate of article XVI, section 20, the legislature's authority to prescribe a statutory framework for local option elections is *broad*." Tex. Att'y Gen. Op. No. JM-1177 (emphasis added).

The legislature has exercised its legislative power and prescribed a statutory framework for local option elections. While part of that framework provides that a territory's local option status remains in effect until voters in that

13

same territory vote to alter that status in another local option election, another part of that framework brings finality and validity to a local option election "in all respects on all courts" if no contest is timely instituted. *See* Tex. Alco. Bev. Code Ann. § 251.80(a); Tex. Elec. Code Ann. § 501.155(c). Election code section 501.155(c) does not conflict with alcoholic beverage code section 251.80(a); section 501.155(c) merely establishes a date certain for finality of local option elections. *See Evans*, 55 Tex. Crim. at 451, 117 S.W. at 168 (reasoning that statute "simply serves as a statute of limitation and repose against" local option election contests). We decline to ignore section 501.155(c) or assume that it is unconstitutional.

Because no party timely instituted a contest to the 2005 local option election, it is conclusively presumed that the election was valid and binding in all respects on all courts. The local option status of current Precinct 2 allowing the sale of beer and wine was therefore legally put into effect as a result of the 2005 local option election, and the 2009 local option election, which used the same territory as the 2005 local option election, changed the local option status of current Precinct 2, legally putting into effect the sale of all alcoholic beverages, including mixed beverages. The 2009 local option election held in current Precinct 2 is not void. Accordingly, we hold that the trial court erred by granting summary judgment in favor of Gibson on his election contest claim and by denying Appellants' motions for summary judgment on Gibson's election contest

14

claim.  We sustain Horn, Coleman, Marchant, Mitchell, and Eads's only issue and Stanley's second issue.

## V. Conclusion

Having overruled Stanley's first issue, we affirm the trial court's order denying Stanley's motion to disqualify.  Having sustained Horn, Coleman, Marchant, Mitchell, and Eads's only issue and Stanley's second issue, we reverse the trial court's final judgment and render judgment that Gibson take nothing on his election contest claim.  *See* Tex. R. App. P. 43.2(c).

BILL MEIER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DELIVERED:  August 29, 2011